UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CITIZENS ALLIED FOR INTEGRITY AND ACCOUNTABILITY, INC.; MELVIN and TERRI PERSON; JAMES and JAN MITCHELL; SUE BIXBY; MARTINA JARAMIOLLO; RYAN KECK; KRISTIE RAE COOPER; HARVEY and BERNICE EASTON; RANDY and TERESA PAYNE,<br><br>          Plaintiffs,<br><br>v.<br><br>DUSTIN MILLER, in his official capacity as Director of the Idaho Department of Lands; BETTY COPPERSMITH, MARC SHIGETA, JAMES CLASSEN, and RAY HINCHCLIFF, in their official capacities as members of the Idaho Oil and Gas Conservation Commission,<br><br>          Defendants. | Case No. 1:21-cv-00367-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Snake River Oil and Gas, LLC's ("Snake River") Motion to Intervene. Dkt. 10. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral

argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

Upon review, and for the reasons set forth below, the Court GRANTS the Motion.

## II. BACKGROUND[1]

Reservoirs of hydrocarbons, such as natural gas, lie beneath parts of Idaho. Dkt. 1, ¶ 8. These underground reservoirs frequently stretch across property boundary lines, and consequently multiple owners, holding title to the surface and mineral rights of their land, have a claim on the reservoirs. *Id.* at ¶ 9. To facilitate the private commercial development of oil drilling, the State of Idaho has adopted statutory provisions compelling landowners to sell their rights to private drilling companies when certain conditions are met. *Id.* at ¶ 9–10. These provisions require a developer to apply for a "spacing order" and an "integration order." *Id.* at ¶ 10.

A "spacing order" application requires the identification of a likely underground pool of hydrocarbons, such as natural gas, and seeks an order from the Idaho Oil and Gas Conservation Commission (the "Commission") setting appropriate spacing of wells to recover the hydrocarbons efficiently and without excessive well-drilling. *Id.* at ¶ 11. An "integration order" application seeks an order from the Commission which integrates the mineral rights owners and requires them to sell those mineral rights on terms established by a combination of statutes and administrative decisions. In other words, the individual landowner rights are bundled and sold as a whole. *Id.* at ¶ 12.

---

[1] The following facts are taken from Plaintiffs' Complaint. Dkt. 1.

MEMORANDUM DECISION AND ORDER - 2

In 2016, two corporate entities submitted an application for the entry of a spacing order and an integration order concerning a potential pool of natural gas underlying land in Fruitland, Idaho. *Id*. at ¶ 13. The Commission issued an order integrating a spacing unit consisting of Section 14, Township 8 North Range 5 West, Boise Meridian, Payette County, Idaho. *Id*. at ¶ 14. This led to the drilling of the well, which is known as "Barlow 1-14". *Id*. Those two entities later went bankrupt, and Snake River obtained ownership of their mineral rights, including those relating to the integration unit containing Barlow 1-14. *Id*. at ¶ 16.

A year later, Snake River applied for a permit to drill a second well ("Barlow 2-14") within that same spacing and integration unit which would target a different pool of hydrocarbons within the same area already covered by the Barlow 1-14 integration order. *Id.* at ¶ 17. Eventually, after opposition from Plaintiffs and others, the Commission granted the permit to drill Barlow 2-14. *Id.* at ¶ 18–21. Snake River then drilled the well, at an alleged cost of $2.6 million.

Plaintiffs brought the instant case against Defendants on September 13, 2021. Plaintiffs are seeking relief under 42 U.S.C. § 1983, requesting "declaratory relief finding the final orders affecting Plaintiff landowners properties invalid and unenforceable as a matter of law;" "permanent injunctive relief barring Defendants from relying on, applying or utilizing the Idaho Oil and Gas Conservation Act unless and until they provide the protections required by the United States Constitution;" and "a declaration and permanent injunctive relief finding the Idaho Oil and Gas Conservation Act as currently written and applied invalid as a matter of law." Dkt. 1, at 8–9. It is clear that Plaintiffs are requesting

MEMORANDUM DECISION AND ORDER - 3

not only the closure of Barlow 2-14 but a wholesale dismantling of Idaho's entire statutory scheme regulating the drilling of oil wells.

On December 17, 2021, Snake River requested intervention as a matter of right or, alternatively, permissive intervention under Federal Rule of Civil Procedure 24. *See* Dkt. 10. Plaintiffs oppose the Motion to Intervene. Dkt. 18.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 24(a) provides:

> On timely application, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that party.

The Ninth Circuit applies a four-part test to determine whether to permit a party to intervene under Rule 24(a):

> (1) the application for intervention must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001). However, courts should construe Rule 24(a) "liberally in favor of potential intervenors" and "should be guided primarily by practical considerations, not technical distinctions." *Id.* at 818 (cleaned up). In other words, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Id.* (quoting Fed. R. Civ. P. 24 advisory committee's notes). However, it is the

MEMORANDUM DECISION AND ORDER - 4

movant's burden to show that it satisfies each of the four criteria for intervention as of right. *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006).

In general, Rule 24(b) also gives the court discretion to allow permissive intervention to anyone who has a claim or defense that shares with the main action a common question of law or fact. Fed. R. Civ. P. 24(b)(1)(B). In addition, in exercising its discretion under Rule 24(b), the Court must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(3).

### IV. DISCUSSION

Although the Court will analyze all four requirements for intervention as of right, Plaintiffs only chose to contest the fourth requirement—the adequacy of representation by the current Defendants. Plaintiffs, however, did not concede the other elements. Dkt. 18, at 3.

#### A. Whether the Motion to Intervene is Timely

The Ninth Circuit "consider[s] three criteria in determining whether a motion to intervene is timely: (1) the stage of the proceedings; (2) whether the parties would be prejudiced; and (3) the reason for any delay in moving to intervene." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996).

Here, Snake River moved to intervene at an early stage of the proceedings. The complaint was filed September 2021. Within roughly three months, Snake River filed the instant motion to intervene. The Court has issued a Scheduling Order (Dkt. 15) but nothing of consequence has happened in the case so far. Accordingly, none of the parties would be

MEMORANDUM DECISION AND ORDER - 5

prejudiced by Snake River joining the case and the Court finds the instant motion to be timely.

### B. Whether Snake River Has a Significantly Protectable Interest

To show a significantly protectable interest, "[i]t is generally enough that the interest asserted is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Berg*, 268 F.3d at 818 (cleaned up). The Ninth Circuit has held that a permit right is a significantly protectable interest. *See, e.g.*, *Sierra Club v. U.S. E.P.A.*, 995 F.2d 1478, 1482–83 (holding that Clean Water Act pollution permits affecting the use of real property were significant protectable interests), *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Service*, 630 F.3d 1173, 1173–74 (9th. Cir. 2011). Here, it is undisputed that Snake River is in possession of a permit to drill Barlow 2-14, a well which will presumably lead to financial earnings. As such, the Court finds that Snake River has a significant protectable interest.

### C. Whether the Disposition of the Action May, as a Practical Matter, Impair or Impede the Applicant's Ability to Protect That Interest

The third requirement is that "the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest." *Berg*, 268 F.3d at 817. The advisory committee elaborated on Rule 24(a), explaining that "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24 advisory comm. notes (Am. 1966).

Here, Plaintiffs requested relief includes "an order invalidating the final orders

entered by Defendant Schultz and the Idaho Oil and Gas Conservation Commission." Dkt. 1, at ¶ 24. This invalidation, if granted, would bar Snake River from using Barlow 2-14, negating all the significant capital already invested into the well and leading to a loss of future income. Clearly, such disposition of the instant case would significantly impede Snake River's ability to protect its interest in the well, and Snake River has met the third requirement.

### D. Whether the IOGCC Can Adequately Represent the Claim of Privilege

The "most important factor" to determine whether a proposed intervenor is adequately represented by an existing party to the action is "how the [proposed intervenor's] interest compares with the interests of existing parties." *Arakaki*, 324 F.3d at 1086 (citations omitted). When an existing party and a proposed intervenor share the same or "identical" ultimate objective, a presumption of adequacy of representation applies. *Id.* This presumption of adequacy especially applies when the government is acting on behalf of a constituency that it represents. *United States v. City of L.A.*, 288 F.3d 391, 401 (9th Cir. 2002). In the absence of a "very compelling showing to the contrary, it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (cleaned up). However, "[t]his does not mean that intervention always must be denied if the interests of the absentee and one of the parties are identical . . . .It means only that there must be a concrete showing of circumstances in the particular case that make the representation inadequate." 7C Wright, Miller & Kane, Federal Practice and Procedure 3d § 1909, at 426–27.

*1. Whether the Government and Snake River Share the Identical Interest*

In determining whether the existing Defendants can adequately represent Snake River's interest, the Court first turns to the question of whether the Defendants and Snake River share an identical interest. Several cases illustrate what an identical interest is.

In *League of United Latin American Citizens v. Wilson*, the Ninth Circuit found that the defendant (the State of California) and the intervenor-applicant, a public interest group sought the same ultimate objective because both were defending the constitutionality of Proposition 187. 131 F.3d 1297, 1301–05 (9th Cir. 1997). Similarly, in *Prete v. Bradbury*, the Ninth Circuit held that the defendant (the Secretary of State of Oregon) and the intervenor-defendants shared the same interest because they both sought to uphold the validity of Measure 26, which prohibited payment to electoral petition signature gatherers on a per signature basis. 438 F.3d 949, 957 (9th Cir. 2006).

Likewise, in *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, the Ninth Circuit ruled that the defendant (the City of Oakland) and the intervenor-defendants (the Sierra Club and the San Francisco Baykeeper) shared the same interest in the litigation. 960 F.3d 603, 620 (9th Cir. 2020). In that case, the City of Oakland contracted with the predecessor-in-interest of Oakland Bulk & Oversized Terminal, LLC ("OBOT") to develop a commercial terminal on an abandoned military base, a contract which OBOT acquired. *Id.* at 607. However, when the public angrily responded to the news that coal would be transported through the terminal, the City of Oakland passed regulations banning coal from being transported through the terminal. *Id.* OBOT sued, claiming breach of contract. Sierra Club and the San Francisco Baykeeper moved to intervene on the side of

the City. Although the intervenor-defendants claimed that their "narrower interest—a focus on health, safety and environmental protections, as opposed to Oakland's broader concerns that include such matters as the City's finances and its contractual relationship with OBOT" was sufficient to rebut the presumption of adequacy, the Ninth Circuit was not persuaded. *Id*. at 620. As such, the intervenor-applicants were not allowed to help defend the anti-coal regulations.

Notably, in *Wilson*, *Prete*, and *Oakland Bulk*, the intervenors were seeking to uphold the government's regulations, and nothing more. More analogous to the instant case are situations in which intervenors shared a related but separate interest, such as in cases where the intervenors had a distinct economic interest or were arguing for a different interpretation of government regulations.

One such example is *Berg*. In that case, several environmental groups sued various officers of Fish and Wildlife Services, the Department of the Interior, the U.S. Army Corps of Engineers, and the City of San Diego, challenging "the measures Defendants have taken to ensure the protection of seven endangered wetland species, and the validity of conservation plans and an agreement and permit that regulate development projects affecting these and other protected species." *Berg*, 268 F.3d at 814. Those measures included a comprehensive land management plan that took the City of San Diego over half a decade to create with input from a wide variety of stakeholders. The plan was specifically designed to create a "workable balance between preservation of natural resources and regional growth and economic prosperity." *Id.* at 815. The intervenor-defendants consisted of a construction company and four national and local building trade associations. *Id.* at

MEMORANDUM DECISION AND ORDER - 9

814. Several of the company's projects had met the standards of the plan, received approval, and were being implemented. *Id.* at 820. Even though the projects were not directly being attacked, the Ninth Circuit granted the intervenor-defendants motion to intervene, explaining that the government agencies had different priorities than the private sector intervenor-defendants:

> Just as the City could not successfully negotiate the Plans without some private sector participation from Applicants, so too the City in this case cannot be expected successfully to safeguard Applicants' legally protectable interests. Indeed, the City's response to the Applicants' motion acknowledges that it "will not represent proposed intervenors' interests in this action." Moreover, FWS, a federal agency, and other defendants also cannot be expected under the circumstances presented to protect these private interests. Applicants would likely offer important elements to the proceedings that the existing parties would likely neglect. *The priorities of the defending government agencies are not simply to confirm the Applicants' interests in the Plans, the IA, and the City's ITP.* The interests of government and the private sector may diverge. On some issues *Applicants will have to express their own unique private perspectives and in essence carry forward their own interests* in the IA.

*Id.* at 823–24 (emphasis added).

Similarly, in *California ex rel. Lockyer v. United States*, the Ninth Circuit held that the United States and the applicant intervenor-defendants had "distinctly different, and likely, conflicting" interests because the United States was arguing for a much narrower interpretation of the statute at question than the intervenors desired, an interpretation so narrow that the interpretive differences between the government and the proposed intervenors went "to the heart" of the interpretation of the statue at issue. 450 F.3d 436, 444–45 (9th Cir. 2006).

Here, as of right now, both Snake River and Defendants are interested in upholding

the permits granted by the IOGCC. However, the Defendants also have several other interests in this case because Plaintiffs are attacking the validity of the Idaho Oil and Gas Conservation Act. Dkt. 1, at 9. Thus, like the defendants in *Berg*, Defendants are concerned with protecting its entire statutory scheme as a whole, which is a much broader interest than a single well. Unlike the interests of the proposed intervenors in *Wilson*, *Prete*, and *Oakland Bulk*, Snake River has discrete economic interests involved in the litigation. These additional economic interests, like the intervenors in *Berg*, are sufficient enough for this Court to find that the Snake River and Defendants do not have identical interests and as such the presumption of adequacy does not apply. Like the intervenors in *Lockyer*, Snake River and Defendants have "distinctly different" interests because, as with the wildly varying statutory interpretations in *Lockyer*, it is all too easy to foresee Defendant's sacrificing Snake River's interests in the permits in order to protect Defendant's interest in the statutory scheme as a whole. Thus, there is no presumption requiring a compelling showing that the existing Defendants will not adequately represent its interests. In other words, the normal standard, as explained below, applies.

   2. *Adequacy of Representation*

The Ninth Circuit has identified three factors for evaluating the adequacy of representation: (1) whether the interest of an existing party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the existing party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that existing parties would neglect. *Arakaki*, 324 F.3d at 1086. "The prospective intervenor bears the burden of demonstrating that existing

parties do not adequately represent its interests." *Glickman*, 82 F.3d at 838. This burden is satisfied if a proposed intervenor shows that representation "may be" inadequate. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). Furthermore, courts consider this minimal burden satisfied when "the interests of [intervenors] were potentially more narrow and parochial than the interests of the public at large." *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998). However, government representation is not inadequate simply because the intervenor-defendant has "mere differences in [litigation] strategy." *United States v. City of Los Angeles*, 288 F.3d 391, 402–03 (9th Cir. 2002).

Several cases illustrate the principle that that individuals or organizations with a narrow economic interest may intervene in cases involving a broader statutory scheme because the government's representation (focused on the statutes themselves instead of the economic interests of the intervenors) may be inadequate. As explained above, the Ninth Circuit in *Berg* allowed a construction company and various building associations to intervene to protect their economic interests when environmental groups sued the City of San Diego and various governmental agencies attempting to strike down the City's developmental plan. *Berg*, 268 F.3d at 824. In *Mendonca*, the Ninth Circuit allowed the International Brotherhood of Teamsters ("IBOT") to intervene as defendants because the outcome of the case, or rather the interpretation of the statute at issue, would directly influence the rates that the members of IBOT were paid for their work. *Mendonca*, 152 F.3d at 1190. Similarly, in *Snowlands Network v. United States*, the Eastern District of California allowed various associations of snowmobile sellers and users to intervene in a

lawsuit brought by various environmental groups against the Forest Service seeking to end a governmental program involving snowmobile trail maintenance that, allegedly, was leading to an increased number of snowmobiles, and pollution, in certain national forests. 2012 WL 4755161, at *1 (E.D. Cal. Oct. 4, 2012). Because the outcome of the case would directly influence the use and sales of snowmobiles, the court granted the motion to intervene. *Id*. at *3.

The District of Idaho has also ruled similarly. *Portfolio FB-Idaho, LLC v. Fed. Deposit Ins. Corp.*, 2010 WL 5391442, at *4 (D. Idaho Dec. 17, 2010) ("While FDIC protects the interests of the general public and of the failed bank, it cannot be expected to protect Stilwyn's interests any more than any lender could be expected to protect a borrower's interest."). Other district courts have done likewise. *See, e.g.*, *Env't Def. Ctr. v. Bureau of Safety and Env't Enf't*, 2015 WL 12734012, at *4 (C.D. Cal. April 2, 2015) (holding that the presumption of adequate representation did not apply and that the defendants would not adequately represent the proposed intervenors because "the Proposed Intervenors seek to protect their private interests while the Defendants have an interest in protecting the public in general"); *Swinomish Indian Tribal Comm. v. Army Corps of Engs.*, 2019 WL 469842, at *3 (W.D. Wash. Feb. 6, 2019) (granting the motion to intervene because the private interests of the proposed intervenor, a shellfish farming company, may not be adequately represented by the defendant government agencies); *Klamath Siskiyou Wildlands Ctr. v. United States Bureau of Land Mgmt.*, 2020 WL 1052518, at *3 (D. Or. March 4, 2020) (granting the motion to intervene because the proposed intervenor has "a specific private interest in protecting its contract rights and ability to purchase future timber

sale offerings from BLM," which differed from the BLM's "more general interest in following and enforcing regulations and defending agency actions").

Here, as explained above, it is not clear that Defendants will "undoubtedly make all of a proposed intervenor's arguments." *Arakaki*, 324 F.3d at 1086. As explained above, Snake River has distinct economic motivations from the Defendants. Snake River is focused on protecting its permits, while the government officials are naturally more concerned with protecting the Idaho Oil and Gas Conservation Act. One can imagine the Defendants withdrawing the permits in an attempt to render the case moot and therefore preserve their statutory scheme.[2] There is little to stop Defendants from doing so, while Snake River has financially tied itself to those permits. As the Ninth Circuit explained in *Berg*, "[t]he priorities of the defending government agencies are not simply to confirm the Applicants' interests [or permits]" in the statutory scheme. *Berg*, 268 F.3d at 823. As such, Snake River will not be represented adequately by the Defendants.

Accordingly, all four prongs are met, and the Court GRANTS the Snake River's Motion to Intervene as of right pursuant to Rule 24(a). Alternatively, however, the Court finds permissive intervention is also appropriate.

### E. Permissive Intervention

The Court's discretion to grant or deny permissive intervention is broad. *Spangler*

---

[2] Although the Government has not yet done so, the Court feels comfortable relying at least in part on this possibility because a proposed intervenor must only show that representation "may be" inadequate. *Trbovich*, 404 U.S. at 538 n.10. Snake River's argument is reasonable and as such Snake River has met its burden.

MEMORANDUM DECISION AND ORDER - 14

*v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (cleaned up). The Ninth Circuit has "often stated that permissive intervention requires: (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (citations omitted). "In exercising its discretion," the Court must also "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). When a proposed intervenor has otherwise met the requirements, "the court may also consider other factors in the exercise of its discretion, including the nature and extent of the intervenors' interest and whether the intervenors' interests are adequately represented by other parties." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (cleaned up).

The first prong is that the Court must have an independent ground for jurisdiction. The Ninth Circuit has explained that "in federal-question cases, the identity of the parties is irrelevant and the district court's jurisdiction is grounded in the federal question(s) raised by the plaintiff." *Geithner*, 644 F.3d at 844. Furthermore, "[w]here the proposed intervenor in a federal-question case brings no new claims, the jurisdictional concern drops away." *Id.* Accordingly, an independent ground for jurisdiction exists in this case because plaintiffs are bringing their claims under 42 U.S.C § 1983, and the proposed-intervenors are not raising new claims. The second prong requiring a timely motion has been met, as explained above. Similarly, the third prong is also met because Snake River's permits are clearly a critical part of the instant case. Accordingly, permissive intervention is appropriate in this case.

MEMORANDUM DECISION AND ORDER - 15

In sum, the Court will allow Snake River to intervene as of right, and, alternatively, finds permissive intervention is also appropriate.

## V. ORDER

The Court HEREBY ORDERS:

1. Snake River's Motion to Intervene (Dkt. 10) is GRANTED.

DATED: May 5, 2022

David C. Nye
Chief U.S. District Court Judge