LAWRENCE G. WASDEN
Attorney General
State of Idaho

DARRELL G. EARLY
Deputy Attorney General
Chief, Natural Resources Division

JOY M. VEGA (ISB #7887)
KRISTINA N. FUGATE (ISB #9242)
Deputy Attorneys General
Natural Resources Division
Office of the Attorney General
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone: 208-334-2400
Fax: 208-854-8072
E-mail: joy.vega@ag.idaho.gov
            kristina.fugate@ag.idaho.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CITIZENS ALLIED FOR INTEGRITY AND ACCOUNTABILITY, INC., MELVIN and TERRI PERSON, JAMES and JAN MITCHELL, SUE BIXBY, MARTINA JARAMIOLLO, RYAN KECK, KRISTIE RAE COOPER, HARVEY and BERNICE EASTON, RANDY and TERESA PAYNE, <br><br> Plaintiffs, <br><br> v. <br><br> DUSTIN MILLER, in his official capacity as Director of the Idaho Department of Lands, BETTY COPPERSMITH, MARC SHIGETA, JAMES CLASSEN, and RAY HINCHCLIFF, all in their official capacities as members of the Idaho Oil and Gas Conservation Commission <br><br> Defendants. | Case No. 1:21-cv-367-DCN <br><br> MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |

Defendants Dustin Milller, in his official capacity as Director of the Idaho Department of Lands ("IDL"); and Betty Coppersmith, Marc Shigeta,[1] James Classen, and Ray Hinchcliff, Commissioners of the Idaho Oil and Gas Conservation Commission (collectively "Commission"), each in their official capacity (collectively "Defendants"), by and through the Office of the Attorney General and pursuant to F.R.C.P. 7(b)(1) and 56, and Dist. Idaho Loc. Civ. R. 7.1(b), hereby submit this Memorandum in Support of Defendants' Motion for Summary Judgment.

## I.     INTRODUCTION

Plaintiffs' Complaint [Dkt. 1] challenges "the final orders affecting Plaintiff landowners' properties." Compl. ¶ 26. Plaintiffs' 42 U.S.C. § 1983 cause of action includes the following:

(1)    A claim that the administrative hearing proceedings failed to provide Plaintiffs procedural due process;

(2)    A claim that these orders violated the U.S. Constitution's takings clause by appropriating private property without just compensation; and

(3)    A claim that the Idaho Oil and Gas Conservation Act establishes terms and conditions for a sale of Plaintiffs' mineral rights that:

(a) violate procedural and substantive due process; and
(b) fail to provide equal protection of the laws.[2]

Plaintiffs appear to challenge two Commission administrative orders:

(1) The August 5, 2016 integration order issued following notice and hearing in administrative contested case Docket No. CC-2016-OGR-01-001 ("2016 Integration Order") that integrates a 640-acre spacing unit in Fruitland, Idaho.

(2) A May 28, 2021 Final Order issued by the Commission that interpreted the 2016 Integration Order after notice and hearing.

Defendants ask this Court to dismiss all of Plaintiffs' causes of action as a matter of law

---

[1] Per F.R.C.P. 25(d), the caption should be amended to reflect changes in office holders. Commissioner Marc Shigeta died in April 2022, and since May 2022 Jennifer Riebe is the new commissioner.
[2] Compl. ¶¶ 24a-c, 26-28. Plaintiffs have conceded that they have no legal claim for "damages in amounts to be proven." Decl. Counsel Ex. W. Pls. Initial Disclosures.

because each and every alleged violation or injury arises from the 2016 Integration Order.  As discussed below, Plaintiffs' claims are time barred, precluded by the prior state proceedings, and non-justiciable.  Plaintiffs' effort to resurrect these claims by reference to the proceedings in 2021 should be rejected and their Complaint dismissed as a matter of law.

## II.      IDAHO'S OIL AND GAS REGULATORY FRAMEWORK

The Idaho Oil and Gas Conservation Act's regulatory framework and the procedural history of these administrative proceedings each guided the process that rendered the challenged orders, and are valid legal authority that should be applied to dismiss all of Plaintiffs' claims.

### A.  Oil and Gas Common Law's Rule of Capture

Oil and gas are fugacious, mobile, and not kept within specific boundaries. *Champlin Ref. Co. v. Corp. Comm'n of Okla.*, 286 U.S. 210, 233 (1932). Because of their fugacious nature, no one owner "can exercise his right to extract from the common reservoir, in which the supply is held, without, to an extent, diminishing the source of supply" for all other owners. *Ohio Oil Co. v. Indiana*, 177 U.S. 190, 203 (1900).

Ownership of oil and gas at common law was defined through the "rule of capture." The rule of capture recognized that "[i]f an adjoining owner drills his own land, and taps a deposit of oil or gas, extending under his neighbor's field, so that it comes into his well, it becomes his property." *Brown v. Spilman*, 155 U.S. 665, 670 (1895). Under the rule of capture, when oil and gas "escape and go into other land, or come under another's control, the title of the former owner is gone." *Id.* As a result, "[e]very person has the right to drill wells on his own land and take from the pools below all the gas and oil that he may be able to reduce to possession including that from land belonging to others . . . ." *Champlin Ref. Co.*, 286 U.S. at 233.

The rule of capture created several problems. First, it encouraged over-drilling because

landowners raced to drill wells to prevent drainage of oil and gas under their property. Bruce M. Kramer and Patrick H. Martin, *The Law of Pooling and Unitization*, § 2.02. (Lexis Nexis Matthew Bender (2016). Second, extra wells prematurely dissipated natural reservoir energy. *Id.* This led to higher production costs and the inability to produce the maximum amount of oil and gas from a pool, which wasted the resource. *Id.* Those problems led states to use their regulatory authority to modify the common law rule of capture. The U.S. Supreme Court emphasized that such state legislative power to regulate oil and gas is "necessarily implied" from the "peculiar nature" of rights to a "common source" of oil and gas. *Ohio Oil Co*, 177 U.S. at 209-10.

**B. Idaho's Oil and Gas Regulatory Framework Protects Resources and Property Rights.**

Idaho exercised its duly authorized legislative power when it modified the rule of capture and enacted the Idaho Oil and Gas Conservation Act ("the Act") in 1963. The Act gives the Commission the duty to regulate exploration and production, "prevent waste of oil and gas and to protect correlative rights, and otherwise to administrate and enforce this act." I.C. § 47-315(1).

Under Idaho law, mineral interest owners hold a correlative right in the oil and gas under their properties. A correlative right is defined as "the opportunity of each owner in a pool to produce his just and equitable share of oil and gas in a pool without waste." I.C. § 47-310(4). The Commission's duty is to protect correlative rights by avoiding unnecessary wells or expense, and to regulate "in a manner that allows all operators and royalty owners a fair and just opportunity for production and the right to recover, receive and enjoy the benefits of oil and gas or equivalent resources, while also protecting the rights of surface owners." I.C. §§ 47-315(2), 47-315(1), (2).

To protect correlative rights, the Act establishes spacing units that limit the number of wells that can be drilled into a particular pool of oil and gas. I.C. §§ 47-317, 47-318. This ensures the "efficient and economical development of the pool as a whole." I.C. § 47-318(2). Spacing units

are established through either: spacing orders under Idaho Code § 47-318, or "state-wide" or "default" spacing units with drilling location requirements in Idaho Code § 47-317. State-wide spacing occurs in the absence of a spacing order.[3]

If a mineral interest owner who wants to drill a well in a spacing unit is unable to reach agreement to share production with all other owners in the unit, Idaho law provides for the Commission, through the Oil and Gas Administrator ("Administrator"),[4] to "integrate" uncommitted mineral interest owners[5] who do not voluntarily agree to participate.  I.C. §§ 47-320; 47-328(3).  "Integration" combines separate tracts within a spacing unit into a common interest for purposes of drilling, development, and operation of a well or wells and for sharing of production from the unit. I.C. § 47-320 (1), (2). Each integration order "shall be upon terms and conditions that are just and reasonable." I.C. § 47-320(1).

As part of combining those separate tracts, an integration order requires a well's operator to offer uncommitted owners the right to fully participate in the well's proceeds. An uncommitted owner has four options of ownership to affirmatively choose from. The first option is to participate as a working interest owner by paying their proportionate share of the actual costs of drilling and operating the well. I.C. § 47-320(3)(a). The second option is to have the well's cost held back from their proceeds with a "risk penalty" of up to 300% of the proportionate cost.  I.C. § 47-320(3)(b). Uncommitted owners also can opt to voluntarily enter into a lease, or be "deemed leased."  I.C. § 47-320(3)(c), (d). "Deemed leased" owners receive payment terms codified by the Legislature and common to industry, including a 1/8 royalty and "the highest bonus payment per acre the operator

---

[3] Prior to statutory changes in 2017, state-wide spacing requirements used in the absence of spacing orders were found in former rule IDAPA 20.07.02.120.02 (2016).

[4] Prior to 2017, the IDL Director had the authority to order integration. I.C. § 47-324(c)(v)(2016).

[5] An "uncommitted owner" is an owner of a mineral interest of a parcel of property "who is not leased or otherwise contractually obligated to the operator."  I.C. § 47-310(31).

originally paid to another owner" in the unit prior to filing the application. I.C. § 47-320(3)(d).

The Act also requires that all uncommitted owners have notice and opportunity for hearing prior to the Administrator issuing an integration order. I.C. § 47-328(3). In *Citizens Allied for Integrity and Accountability ("CAIA") v. Schultz*, a case about procedural due process claims related to a different integration order, the court required uncommitted owners "know the standard which the hearing officer will apply in considering whether the integration order is just and reasonable*." 335 F.Supp.3d 1216, 1228. To comply, the Commission vacated that challenged integration order. (Decl. Counsel Ex. G).[6] It also added a level of procedure for future integration applications, requiring the Administrator to hold a hearing and issue an order identifying factors he would consider evidence on to determine "just and reasonable terms" for the application. (Decl. Counsel Ex. G). No other existing integration orders were affected by the *CAIA v. Schultz* decision, including the 2016 Integration Order that is the subject of this case.

## C. Procedural History of the 2016 Integration Order Encouraged Owner Participation.

In May 2016, IDL received an integration application from oil and gas operator AM Idaho, LLC and Alta Mesa Services, LP (collectively "Alta Mesa") for a spacing unit consisting of Section 14, Township 8 North, Range 5 West, Boise Meridian, Payette County, Idaho ("Section 14"). (Defs.' M. Facts ¶ 1). Section 14 is a state-wide spacing unit that allowed wells to different sources of supply to be developed as long as the operator complies with the Act. (Defs.' M. Facts ¶ 2). In May 2016, certain Plaintiffs owned a combined 2.5 acres of Section 14's 640 acres.[7] Those Plaintiffs received notice of the evidentiary hearing on the 2016 application. (Defs.' M. Facts ¶

---

[6] Defendants' Statement of Undisputed Material Facts ("Defs.' M. Facts") is filed herewith.
[7] (Defs.' M. Facts ¶ 3). Plaintiffs that were uncommitted owners in 2016 are Sue Bixby, Harvey and Bernice Easton, Martina Jaramillo, James and Jan Mitchell, and Melvin and Terri Person. Plaintiffs Randy and Teresa Payne, Ryan Keck, and Kristie Rae Cooper did not own property when the application was filed. (Defs.' M. Facts ¶ 5).

12). No Plaintiffs appeared at that hearing. (Defs.' M. Facts ¶ 12, 13). On August 5, 2016, the Director issued the 2016 Integration Order. (Defs.' M. Facts ¶ 16). No Plaintiffs appealed to the Commission or petitioned for judicial review in Idaho district court. (Defs.' M. Facts ¶ 19).

IDL granted a permit to drill for the "Barlow 1-14" well in October 2017. (Defs.' M. Facts ¶ 20). In 2020, Snake River Oil and Gas, LLC ("Snake River") became the operator of wells in the Payette area, including the Barlow 1-14. (Defs.' M. Facts ¶ 22). On June 26, 2020, Snake River submitted an application for permit to drill ("APD") a second well in Section 14 named the "Barlow 2-14." (Defs.' M. Facts ¶ 23).

Plaintiffs filed comments asking the Administrator to deny the Barlow 2-14 APD. (Defs.' M. Facts ¶ 25, 26).  Their arguments included, (1) Idaho Code § 47-318 presumed only one well per spacing unit; and (2) the 2016 Integration Order established a spacing unit that only allowed one well. *Id.* The Administrator initially denied the Barlow 2-14 APD, concluding: "The order in Docket No. 2016-OGR-01-001 does not authorize an additional well to be drilled within Section 14." (Defs.' M. Facts ¶ 27, 28). Snake River appealed to the Commission. (Defs.' M. Facts ¶ 29).

Plaintiffs participated in the Barlow 2-14 appeal proceedings by filing written comments and arguing at the appeal hearing. (Defs.' M. Facts ¶ 31, 32). The Commission granted the Barlow 2-14 APD in an October 2020 Final Order. (Defs.' M. Facts ¶ 33). In that order, the Commission determined that the Barlow 2-14 APD met the requirements of the Act and its associated rules. *Id.* The Commission determined that two wells were available under the state-wide spacing law. (Defs.' M. Facts ¶ 35). Plaintiffs did not file a petition for judicial review in state court challenging that October 2020 Final Order. (*See* I.R.C.P. 84; Defs.' M. Facts ¶ 37).

On November 10, 2020, Plaintiffs' attorney sent the Administrator a letter asserting that Snake River intended to rely on the 2016 Integration Order for the Barlow 2-14, and that 2016

order "was entered for the purpose of integrating a different pool of hydrocarbons." (Defs.' M. Facts ¶ 38). The letter stated that the Administrator should vacate the 2016 Integration Order because it had the same issues as the integration order in *CAIA v. Schultz*(Defs.' M. Facts ¶ 39). On December 16, 2020, in response to concerns raised by mineral rights owners, the Commission initiated the contested case that led to the May 2021 Final Order. (Defs.' M. Facts ¶ 40).

The purpose of the 2021 contested case was "to determine whether the integration order in Docket No. CC-2016-OGR-01-001 applied to the permitted proposed Barlow #2-14 well." (Defs.' M. Facts ¶ 40). Plaintiffs appeared and participated in the proceeding, including a March 9, 2021 hearing. (Defs.' M. Facts ¶ 42, 45). After the hearing, the Commission's hearing officer issued a recommended order. (Defs.' M. Facts ¶ 48). The Commission adopted that recommended order as the May 2021 Final Order. (Defs.' M. Facts ¶ 53). The May 2021 Final Order concluded that the 2016 Integration Order applies to the permitted proposed Barlow 2-14 well. (Defs.' M. Facts ¶ 49).

The May 2021 Final Order specifically found that the 2016 Integration Order "did not limit the Section 14 Barlow Unit to one well; did not require a new integration application process for a second well; and integrated all separate tracts without restriction by depth, pool, or well." (Defs.' M. Facts ¶ 50). That decision interpreted the 2016 Integration Order by reviewing language in the Act and its rules, the Barlow 2-14 Order, and the 2016 Integration Order. (Defs.' M. Facts ¶ 49-51). For purpose of the matter before this Court, it is important to note the purpose of the 2021 contested case was not to address issues decided in *CAIA v. Schultz*. Plaintiffs did not file for judicial review of the May 2021 Final Order in state court. (Defs.' M. Facts ¶ 40). Instead, Plaintiffs attempt to circumvent state law by filing their Complaint in this Court on September 13, 2021.

### III.    ARGUMENT

Plaintiffs do not define, and cannot prove, that Defendants violated any of their due process

or property rights. Plaintiffs cannot prove the occurrence of any alleged deprivations as a result of the 2016 Integration Order or any other "recent integration." (*See* Compl. ¶ 1, 22, 24).

All of Plaintiffs' claims fail and this Court should grant judgment as a matter of law because their claims are barred by the statute of limitations and issue preclusion. Their claims are barred, despite Plaintiffs' attempts to characterize it otherwise, because the May 2021 Final Order does not constitute a new integration order. Rather, it merely interprets the 2016 Integration Order by determining the 2016 Integration Order allowed a second well. No new injury or violation of due process occurred in 2021. Plaintiffs' alleged injuries all occurred in 2016, and they knew of those alleged injuries when the 2016 Integration Order was issued. Even if the Court were to consider Plaintiffs' claims about the 2021 Final Order, Plaintiffs received procedural due process in that matter, and the Act does not violate the takings clause, substantive due process, or equal protection clause. Thus, Defendants' respectfully request the Complaint be dismissed as a matter of law.

## A. Plaintiffs' claims are barred by the statute of limitations because their claims accrued in 2016 and they fail to show any new wrongful act causing an injury in the two years prior to filing the Complaint.

While Plaintiffs claim a taking and due process violation resulting from the Commission's final orders, Plaintiffs' alleged injuries focus on procedures and terms used in a 2016 hearing and integration order. But Plaintiffs cannot show any new, independently wrongful act or newly discovered injury occurring within the two-year statute of limitations.

In a Section 1983 cause of action, the statute of limitations length "is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Idaho's statute of limitations for personal injury cases is two years. I.C. § 5-219(4). Since Plaintiffs filed their Complaint on September 13, 2021, claims accruing before September 13, 2019 are time barred.

A 42 U.S.C. § 1983 claim's date of accrual is governed "by federal rules conforming in general to common-law tort principles." *Wallace*, 549 U.S. at 388. The standard rule is that accrual

occurs "when the plaintiff has 'a complete and present cause of action,' that is when 'the plaintiff can file suit and obtain relief.'" *Id.* (internal citations omitted). This is "when the wrongful act or omission results in damages . . . even though the full extent of the injury is not then known or predictable." *Id.* at 391 (quoting 1 C. Corman, Limitation of Actions § 7.4.1, pp. 526-527 (1991)).

1. **The statute of limitations has run on the Commission's 2016 Integration Order.**

The 2016 Integration Order in Docket No. 2016-OGR-01-001 was a discrete act that occurred well beyond the statute of limitations. The U.S. Supreme Court has held that discrete acts are not actionable if time barred, even when they are related to alleged acts that are timely filed. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

In this case, any due process violations arising from the 2016 Integration Order's administrative process would have arisen at the latest when 2016 order was issued on August 5, 2016. (Defs.' M. Facts ¶ 16). Further, Plaintiffs' takings claim is based on statutory terms received as "deemed leased" owners after declining other participation options in the 2016 Integration Order. (Defs.' M. Facts ¶ 17-19). This similarly arose when the 2016 Integration Order was issued. Because both claims rest on the discrete act of the 2016 decision, the statute of limitations has long-run on the 2016 Integration Order.

2. **No injury or independently wrongful act occurred within the statute of limitations.**

The next question is whether the 2021 Final Order was an independent wrongful act that caused a new injury. It was not. The Ninth Circuit's date of accrual analysis examines whether a plaintiff's claim centers on: (1) an independently wrongful act that occurred within the statute of limitations; or (2) merely an inevitable consequence that occurred within the statute of limitations as a result of a discrete act that occurred outside the statute of limitations. *Pouncil v. Tilton*, 704 F. 3d 568, 576-79, 581-83 (9th Cir. 2012).

The time of accrual is "when the wrongful act or omission results in damages . . . even

though the full extent of the injury is not then known or predictable." *Walllace*, 549 U.S. at 391 (quoting 1 C. Corman, Limitation of Actions §7.4.1, 526-527 (1991); *see also Doe, 7 v. Josephine Cnty.*, 697 Fed. App'x. 567, 568 (9th Cir. 2017) (federal claims for abuse accrued at time of initial injury when plaintiffs "recognized they had suffered some harm and knew the identity of the tortfeasor, even if a different kind of harm arose years later."). In other words, for Plaintiffs to have any actionable claim, they must allege a later, independently wrongful act that causes an injury within the statute of limitations. They have not and cannot make such a claim.

Here, Plaintiffs' claims fail because the May 2021 Final Order is not an independently wrongful act nor could it be the cause of Plaintiffs' alleged injuries. The May 2021 Final Order was not an integration order. It did not add any new integration terms or alter their rights as "deemed leased" owners. (Decl. Counsel Ex. T). The May 2021 Final Order only examined and interpreted the 2016 Integration Order's language and found the 2016 Order was not limited to one well. Thus, the May 2021 Final Order cannot result in any new, wrongful act independent of the 2016 Integration Order.

Also, Plaintiffs were aware of all alleged injuries in 2016. The very nature of the alleged injuries plainly shows they accrued too long ago. A claim accrues when the "plaintiff knows or has reason to know *of the injury which is the basis of the action*." *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 743 (9th Cir. 2019) (quoting *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (emphasis added). Plaintiffs complain they were forced to lease under terms that are a taking and were allegedly forced to lease under terms that were not just and reasonable following the hearing that did not include pre-articulated categories of just and reasonable topics for presentation at the hearing. (Compl. ¶¶ 26, 27, 28).

Plaintiffs knew of each alleged injury in 2016 when the 2016 Integration Order was issued.

They received and could review all the order's terms then. (Defs.' M. Facts ¶ 16). They could determine whether there were terms they disagreed with. (Defs.' M. Facts ¶ 17-18). They also knew what appeals process they were entitled to. (Defs.' M. Facts ¶ 19). None of Plaintiffs' alleged injuries rely upon the number of wells allowed to be drilled. Thus, while Plaintiffs may claim they did not know whether the 2016 Integration Order could apply to more than one well, that argument is centered on the extent of the injury, not when the injury occurred. Plaintiffs knew of their alleged injuries in 2016 and therefore their claims are barred.

Plaintiffs do not agree with how the Commission interpreted its 2016 Integration Order. Regardless, it is too late for that Order to be challenged. The independent act of integration and the alleged resulting injuries took place in 2016, and Plaintiffs' claims are time barred.

### 3. Plaintiffs' facial claims are also barred by the statute of limitations.

Similarly, all of Plaintiffs' facial constitutional claims are barred by the two-year statute of limitations. Facial constitutional claims are also subject to a forum state's statute of limitations and the same tests for claim accrual. *Flynt v. Shimazu*, 940 F.3d 457, 461-62 (9th Cir. 2019). Here, Plaintiffs' facial claims all allege deprivations based on the integration statute in Idaho Code § 47-320. However, the challenged statute was enacted in its current form in 2017, and no integration order has been applied to Plaintiffs since 2016. Hence, all Plaintiffs' facial claims are time barred.

### B. Issue preclusion bars Plaintiffs' claims of "additional deprivations" because they already argued, and lost, the issue of whether the 2016 Integration Order permitted a second well.

In bringing this lawsuit, Plaintiffs ask this Court to relitigate whether the 2016 Integration Order allowed two wells. The Commission already decided that it did in May 2021. (Defs.' M. Facts ¶ 49, 50). Thus, Plaintiffs' claim that a 2021 "second forced sale" happened is actually just a substantive state law issue that has already been decided. The fact that Plaintiffs disagree does not allow them to use 42 U.S.C. § 1983 to relitigate a matter of state law.

Under the federal common law of issue preclusion, an administrative agency's final decision is given preclusive effect. *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 791 (1986). Issue preclusion applies to "state administrative adjudications of legal as well as factual issues." *Misischia v. Pirie*, 60 F.3d 626, 629 (9th Cir. 1995). Issue preclusion importantly conserves judicial resources and fosters judicial reliance by minimizing the possibility of inconsistent decisions. *Montana v. United States,* 440 U.S. 147, 153-54, (1979).

An administrative agency's final decision is given this preclusive effect when (A) its own state courts would apply issue preclusion, and (B) it meets certain fairness requirements. *Elliott*, 478 U.S. at 791. The fairness requirements are articulated in *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394 (1966).[8] For the following reasons, Idaho courts would apply issue preclusion to dismiss Plaintiffs' claims, and so must this Court.

1. **Idaho Courts would apply issue preclusion to Plaintiffs' claims.**

The Idaho Supreme Court has emphasized that issue preclusion "exists to prevent the resurrection of a lawsuit already laid to rest." *Byrd v. State Bd. of Land Comm'rs*, 169 Idaho 922, 931, 505 P.3d 708, 717 (2022). In Idaho, issue preclusion bars relitigating an issue when:

> (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case;
> (2) the issue decided in the prior litigation was identical to the issue presented in the present action;
> (3) the issue sought to be precluded was actually decided in the prior litigation;
> (4) there was a final judgment on the merits in the prior litigation; and
> (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation. *Id.*

i. **Plaintiffs had full and fair opportunity to litigate the issues.**

A party has had "a full and fair opportunity to litigate where an argument could have been

---

[8] The requirements are: (1) the agency act in a judicial capacity, (2) the agency resolved disputed issues properly before it, and (3) the parties have an adequate opportunity to litigate. *Misischia*, 60 F.3d at 629.

made in a prior proceeding." *Bach v. Bagley*, 148 Idaho 784, 795, 229 P.3d 1146, 1157 (2010).

Plaintiffs' participation in all proceedings resulting in the May 2021 Final Order exceeds this standard. Plaintiffs received notice. (Defs.' M. Facts ¶ 42, Decl. Counsel Ex. N). They were represented by counsel. (Defs.' M. Facts ¶ 42, 43). They appeared at the hearing through counsel. (Defs.' M. Facts ¶ 45). They presented argument about whether the drilling of a second well was contemplated in the 2016 Integration Order. (Defs.' M. Facts ¶ 46, 47). They called witnesses to testify. (Defs.' M. Facts ¶ 46). With all those opportunities to participate, Plaintiffs had a full and fair opportunity to litigate their interpretation of the scope of the 2016 Integration Order.

   **ii.    The issues of the validity of the 2016 Integration Order as it applies to the Barlow 2-14 well has already been adjudicated.**

Plaintiffs already challenged the validity of the 2016 Integration Order and whether it governs the Barlow 2-14 well. The Commission already decided the same terms apply between the Barlow 1-14 and the Barlow 2-14. Here, Plaintiffs assert the same issues already decided:

- The Commission "approved the drilling of a single well for a single pool of gas in a [2016] proceeding." (Compl. ¶ 1);

- The 2016 Integration Order was limited and "based upon an identified pool of hydrocarbons" (*Id.* at ¶ 20); and

- There was a "forced sale of a new 'pool' of hydrocarbons" in 2021 that was a "recent integration" and a "new deprivation of separate property against the same landowners." (*Id.* at. ¶ 1, 22, 26).

However, after considering these same claims, the Commission's May 2021 Final Order rejected them and found that the 2016 Integration Order:

- did not limit the Section 14 Barlow Unit to one well;

- did not require a new integration application process for a second well; and

- integrated all separate tracts without restriction by depth, pool, or well.

(Defs.' M. Facts ¶ 50). In addition to those decisions, the Commission concluded that the 2016

Integration Order applies to the Barlow 2-14. (Defs.' M. Facts ¶ 49). In other words, the Section 14 unit and the approved well was already subject to the 2016 Integration Order. No new integration was required for the second well. It follows that Plaintiffs are precluded from alleging that a new integration occurred in 2021. Therefore, this Court cannot determine that the May 2021 Final Order or any related order was "an additional deprivation" that initiated "a second forced sale of Plaintiffs' property against their wishes." (Compl. ¶ 26, 1). The issues are the same and have already been decided by the Commission. Plaintiffs must not be enabled to relitigate them again.

### iii.    The Commission entered final judgment on the merits.

The Commission entered final judgment on the merits in the May 2021 Final Order, acting within its quasi-judicial capacity authorized under Idaho Code § 67-5240, § 47-328, and IDAPA 04.11.01.104. The Commission made findings of fact and conclusions of law, and held that the 2016 Integration Order applied to the Barlow 2-14. In other words, it found the 2016 Order allowed more than one well in the Section 14 spacing unit. Plaintiffs never challenged that order on judicial review in state court. Thus, the Commission's May 2021 Final Order remains the final judgment on the merits governing the same issues Plaintiffs now ask this Court to opine upon. This court should decline to hear issues already adjudicated.

### iv.    Identity of the Parties.

The final element of issue preclusion is that the party against whom the issue is asserted was a party or in privity with a party. Plaintiffs were all parties to the administrative matter resulting in the May 2021 Final Order. (Defs.' M. Facts ¶ 42). Plaintiffs were represented by Plaintiffs' attorney during the 2021 proceedings. (Defs.' M. Facts ¶ 42, 45). Thus, the elements of issue preclusion exist in the record of this case.

Plaintiffs' arguments that the 2016 Integration Order only permitted one well have already been heard and rejected. The 2016 Integration Order's meaning and scope has already been adjudicated. Judicial review in state court offered Plaintiffs an opportunity to challenge the May 2021 Final Order. Plaintiffs choose not to. Consequently, issue preclusion bars them from relitigating those decisions in federal court. Defendants request the Court enter summary judgment dismissing all Plaintiffs' causes of action.

## C.  Alternatively, Plaintiffs' Claims Must be Dismissed on Other Grounds.

If the Court determines that Plaintiffs' claims are not barred in their entirety by the statute of limitations or issue preclusion, other grounds merit dismissing their claims as a matter of law.

### 1.  The 2016 Integration Order does not constitute a taking because Idaho's integration statute is a valid exercise of Idaho's police power that gives all owners the opportunity to receive the same compensation.

The U.S. Constitution's Fifth Amendment prohibits governmental taking of private property "for public use without just compensation." U.S. Const. amend. V. The Fourteenth Amendment applies this prohibition to the states.  *Chicago, B. & Q.R. Co. v. City of Chicago,* 166 U.S. 226, 241 (1897). Plaintiffs allege that they did not receive just compensation for their mineral rights and surface use rights. (Compl. ¶ 28). Such a claim must fail because Idaho's integration statute is a valid exercise of Idaho's police power.

Each integration order, including the 2016 Integration Order, allows mineral owners to choose the same compensation as the unit's operator. Further, even mineral interest owners who do not choose the same compensation as the operator are compensated in integration orders.

Courts have consistently upheld oil and gas integration, or "pooling," statutes against takings challenges. For example, the Oklahoma Supreme Court held a state compulsory pooling statute did not deprive a pooled owner of his mineral rights without compensation. *Patterson v. Stanolind Oil & Gas Co.*, 77 P.2d 83 (1938). The court reasoned:

> [I]t is well established that the police power of the state extends to protecting the correlative rights of owners in a common source of oil and gas supply and this power may be lawfully exercised by regulating the drilling of wells into said common source of supply and distributing the production thereof among the owners of mineral rights in land overlying said common source of supply.

*Id.* at 89. The court held that although pooling "may reduce the plaintiff's immediate or current receipts from the production of the well in question," it protected the common source of supply and prolonged receipts so that the pool's ultimate benefit was greater than if unlimited wells were drilled. *Id*. In the court's view, given the unique nature of rights in oil and gas, "the property here involved has not been taken or confiscated: its use has merely been restricted and qualified." *Id.*

Other state and federal courts have similarly reasoned that integration and pooling statutes merely restrict and qualify the use of property. For example, the Arkansas Supreme Court denied a takings claim where a mineral interest owner argued the statute's requirement of "reasonable" compensation was not enough, instead he wanted "just" compensation. *Gawenis v. Arkansas Oil & Gas Comm'n*, 464 S.W.3d 453, 457 (2015). There, the court held that the integration "did not 'take' anything away" from the mineral interest owner. *Id.* Instead, integration allowed the owner "to lease his interest in the drilling unit in exchange for compensation or to participate in the drilling of the well and receive monetary benefits." *Id. See also Bennion v. ANR Prod. Co.*, 819 P.2d 343, 348 (Utah 1991) (pooling statute's risk penalty was a valid exercise of the police power and not a taking when the nonconsenting owner was given a royalty from production and the opportunity to elect to participate in the drilling). Likewise, the 6th Circuit determined Ohio's pooling laws did not cause a taking because "each landowner's interest in the mineral remains intact; is it simply regulated." *Kerns v. Chesapeake Expl.*, 762 F. App'x 289, 297 (2019). In sum, courts have overwhelmingly held that integration is an appropriate regulation.

Here, Idaho Code § 47-320 is an appropriate regulation of mineral interests. The Act

mandates options and compensation offered in every integration order.[9]  These options ensure that mineral interest owners can participate in the well on the same terms as other working interest owners and the operator by selecting the working interest owner option. I.C. § 47-320(3)(a). A working interest owner's interest is capped only by their proportionate share of the unit, and their obligation to pay their proportionate share of the well's costs. The statutory option at issue with the individual Plaintiffs is being deemed leased. Plaintiffs avoid the well's risk and costs. And they are ensured a bonus payment and the royalty of 1/8 the net proceeds. I.C. § 47-320(3)(d).

The U.S. District Court of Idaho has already acknowledged that Plaintiffs are compensated under the options set forth in the integration statute. *See CAIA*, 335 F. Supp. 3d at 1226. In *CAIA v. Schultz*, the court explained that "it is undisputed that Plaintiffs were not deprived of the royalty and bonus payment – they are written into the statute and cannot be lowered by the IDL Director or the Commission." *Id.* This was despite plaintiffs' suggestion that defendants had authority to alter the amount of compensation, which is the same allegation made here.[10] Further, similar to all other oil and gas integration statutes that have been upheld, any Idaho mineral interest owner has the ability to participate in the operation and proceeds of a well with compensation equal to the operator by choosing the working interest owner option. Plaintiffs chose not to participate.

If this Court adopted Plaintiffs' claim that the Act's integration statute was a taking, it would leave all other Section 14 mineral owners unable to exercise their rights to produce oil and gas. It would also leave the Commission unable to accomplish its statutory duties to prevent waste and protect correlative rights. Because the Act is a valid exercise of Idaho's police power and every integration compensates all mineral owners, Plaintiffs cannot establish any taking.

---

[9] At the time of the 2016 Integration Order, five options were required. *See* I.C. § 47-322(2016)(c)(i-v). After 2017 legislation, today there are four options. *See* I.C. § 47-320(3)(a)-(d).
[10] Compl. ¶ 1 (alleges sale of "valuable assets against their well, at prices to which they did not agree to").

**2.   Plaintiffs' equal protection and substantive due process claims are not plausible.**

To the extent that the Court decides that Plaintiffs' substantive due process and equal protection claims are not barred, Defendants request the Court dismiss them for additional reasons.

**i.      Plaintiffs do not establish that the Act's compensation is arbitrary.**

Substantive due process "forbids the government from depriving a person of life, liberty, or property in such a way that shocks the conscience or interferes with the rights implicit in the concept of ordered liberty." *Corales v. Bennett,* 567 F.3d 554, 568 (9th Cir. 2009) (citations and quotation marks omitted). Plaintiffs allege that the Act's terms "are arbitrary, without reason, and discriminatory to mineral rights owners, instead favoring the oil and gas industry." (Compl. ¶ 27.)

Plaintiffs have not alleged facts to support this claim. Plaintiffs' lack of agreement to prices and terms does not establish arbitrary compensation. Instead, as explained above, Plaintiffs can participate on the same terms as the operator. The options for those who choose to be leased and deemed leased are different because they avoid the well's risk and costs. Their the bonus payment is the highest payment paid to any voluntary owner. I.C. § 47-320(3)(c), (d). A bonus amount based on what other voluntary lessees receive is not arbitrary; it is the best deal anyone in the unit receives. As to royalty, those deemed leased receive a 1/8 royalty. *Id.* A 1/8 royalty is part of pooling statutes that have been upheld in other states. *See Patterson,* 77 P.2d 83, 87 (Okl. 1938). It is also the same royalty used in other state integration statutes. *See, e.g.*, Ark. Code Ann. § 15-72-304; Mont. Code Ann. § 82-11-202. Further, the market price of oil and gas sales sets the amount received. *See* I.C. § 47-332(1)(d). Because the Act's compensation is not arbitrary, the Court should dismiss Plaintiffs' substantive due process claim.

**ii.     Plaintiffs' equal protection claim fails.**

The Fourteenth Amendment's equal protection clause provides: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

The clause ensures that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). The equal protection guarantee also protects individuals who constitute a "class of one." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To establish a "class of one" claim, plaintiffs must show they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id*. at 564. Here, Plaintiffs do not establish disparate treatment on the basis of a protected class like race or gender.  Plaintiffs also have not identified any protected class that they are a part of. Further, no facts exist that suggest they were intentionally treated differently from similarly situated owners in the Section 14 unit. The 2016 Integration Order ensured that all the spacing unit's mineral owners were treated the same because those "deemed leased" received the same minimum compensation as others who had voluntarily leased their mineral interests. (Defs.' M. Facts ¶ 17). Thus, Plaintiffs' equal protection claim must be dismissed.

   **3.  Plaintiffs have not established that the 2016 Integration Order does not provide "just and reasonable terms."**

   Plaintiffs' Complaint ambiguously alleges Defendants violated procedural due process when they did not ensure "terms of the deprivation were 'just and reasonable' as required by federal law" and did not determine the "recent" integration order's terms "were consistent with the requirements of just and reasonable terms." (Compl. ¶ 26). Read plainly, Plaintiffs allege that Defendants' orders do not provide Plaintiffs just and reasonable terms themselves. However, Section 1983 only prohibits violations of federal, not state law. *Campbell v. Burt*, 141 F.3d 927, 930 (9th Cir. 1998). "[T]he scope of 'just and reasonable' is a question of state law, because the term was created by a state statute: the [Act]." *CAIA v. Schultz*, 335 F. Supp. 3d 1216, 1223 (D. Idaho 2018). For that reason, any of Plaintiffs' claims that they did not receive "just and reasonable terms" are not cognizable under Section § 1983.

**4.   Leased Plaintiffs lack standing because they contractually agreed to lease.**

For Article III standing a plaintiff must show (1) he has suffered an 'injury in fact' that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the Defendant's challenged action; and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Leased Plaintiffs Newman, Simmons, Atkins and Rodriguez all voluntarily entered into oil and gas leases. (Defs.' M. Facts ¶ 6). They found those terms acceptable. Moreover, the Commission is not party to those contracts. Further, the 2016 Integration Order's options for participation they complain about do not apply to them because an integration order only offers participation options to "uncommitted owners" as defined in Idaho Code § 47-310(31). They were not uncommitted owners. Thus, these Plaintiffs cannot establish any injury that is fairly traceable to the Commission's orders and vacating the order would not redress their private agreements.

In sum, all Plaintiffs' claims are not cognizable and arose from final acts taken in 2016. They are time barred and precluded. Their efforts to resurrect claims by challenging the May 2021 Final Order that merely interprets the 2016 Integration Order should be rejected.

## IV.   CONCLUSION

For the foregoing reasons, Defendants Dustin Miller, Betty Coppersmith, Jennifer Riebe, James Classen, and Ray Hinchcliff respectfully request that the Court grant their Motion for Summary Judgement in its entirety; thereby dismissing Plaintiffs' causes of action and requests for relief alleged by Plaintiffs in the Complaint.

Dated this 12th day of August 2022.

/s/ Kristina N. Fugate
KRISTINA N. FUGATE
Deputy Attorney General