UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CITIZENS ALLIED FOR INTEGRITY AND ACCOUNTABILITY, INC. et al., <br><br>Plaintiffs, <br><br>v. <br><br>MILLER et al., <br><br>Defendants. | Case No. 1:21-cv-00367-DCN <br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court are three motions: Intervenor's Motion for Summary Judgment (Dkt. 24), Plaintiffs' Motion for Summary Judgment (Dkt. 25), and Defendants' Motion for Summary Judgment (Dkt. 26). On December 16, 2022, the Court held oral argument and took the motions under advisement. Upon review, and for the reasons below, the Court will GRANT Defendants' and Intervenor's Motions and DENY Plaintiffs' Motion.

## II. BACKGROUND

### A. Factual Background

The Idaho Oil and Gas Conservation Act (the "Act") regulates how Idahoans extract oil from their property and how they divide the proceeds. Unlike the common-law rule of capture, which gave all profits to the extractor—even if he or she drew from a pool beneath a neighbor's property—the Act gives every landowner a "correlative right" to the hydrocarbons under his property. That is, "the opportunity . . . to produce his just and

equitable share of oil and gas in a pool without waste." Idaho Code § 47-310(4). To administer and enforce its provisions, the Act establishes the Idaho Oil and Gas Conservation Commission (the "Commission"), and tasks it with protecting Idahoans' correlative rights. Idaho Code § 47-315(2).

      a. <u>Spacing and Integration Orders</u>

The Commission issues two types of relevant orders. Spacing orders establish the number of wells that can be drilled into a particular pool of oil or gas. Spacing units can be created by order under Idaho Code Section 47-318, or, in the absence of an order, by the default provisions in Idaho Code Section 47-317.

Integration orders fold the interests of multiple landowners into a single interest for distributing oil and gas proceeds. Because hydrocarbons usually lie beneath the property of many landowners, it can be challenging for would-be drillers to reach an agreement with all the parties who have collateral rights in the pool. To solve this problem, the Act provides a procedure for the integration of unwilling landowners. It requires the Idaho Department of Lands (the "Department") to approve the integration, or "forced pooling," of uncommitted landowners within a designated spacing unit if certain requirements are met: (1) an oil and gas operator obtains the consent of a minimum percentage of landowners whose land overlays the oil or gas deposit, (2) the operator submits an application that includes all of the statutorily required elements (such as a description of the proposed spacing unit), and (3) the terms of the proposed integration are "just and reasonable." *See* Idaho Code § 47-320.

Integrated landowners can choose from four compensation options that offer

varying levels of participation, risk, and reward. *See id.* Under the final option, landowners who do not voluntarily lease their mineral rights and select a participation option are "deemed leased." *Id.* The Act sets their royalty payment at one-eighth of the well's net profits and guarantees them a bonus payment at the rate of the highest bonus the operator paid before filing the application. *Id.* All landowners, regardless of the option chosen, are entitled to have integration orders "be upon terms and conditions that are just and reasonable." *See* Idaho Code § 47-320. The Act requires that, before the Commission issues an integration order, all uncommitted landowners have notice and an opportunity to attend a hearing. Idaho Code § 47-328(3). Integration orders do not dictate that the hydrocarbons in integrated pools will be developed, but they do override the most significant obstacle to development: the objections of landowners.

   1. *The 2016 Integration Order*

In May 2016, an oil company called Alta Mesa Services ("Alta Mesa") applied to drill in "Section 14," a spacing unit near Fruitland, Idaho. Under the Act, the Department and the Commission held an evidentiary hearing to consider the application. The relevant landowners in Section 14, including all Plaintiffs who owned land in the spacing unit at the time, received notice of the hearing and an invitation to attend. None did. After the hearing, on August 5, 2016, the Commission issued an order integrating Section 14. Though the order did not contain a specific discussion on whether its terms were just and reasonable, none of the landowners challenged it or sued. In October 2016, the Department granted a drilling permit and Alta Mesa sank a well, which the parties call the "Barlow 1-14" well.

### 2. *The Proposed Second Well*

In 2019, Alta Mesa declared bankruptcy. In 2020, Intervenor Snake River Oil & Gas, LLC ("Snake River") succeeded Alta Mesa's interest in Section 14 and the Barlow 1-14 well. On June 26, 2020, Snake River applied to sink another well in Section 14. This well would draw from a different pool of hydrocarbons and be called "Barlow 2-14."

Certain landowners in Section 14—the Plaintiffs here—objected to the proposed Barlow 2-14 well. Collectively, they own 2.5 of the 640 acres that comprise Section 14: less than one percent of its total acreage. Twelve of the Plaintiffs[1] had declined to sign a lease for the first well and continued to oppose the second. The remaining four[2] had agreed to the first well and signed a lease with Alta Mesa, but still opposed the second.[3] In their objections, Plaintiffs argued that Section 47-318 of the Act presumed that only one well could be drilled per spacing unit. They filed comments asking the Department to deny Snake River's application.

At first, the Department accepted the Plaintiff's arguments and denied the drilling permit, but Snake River appealed to the Commission. On appeal, plaintiffs filed more written comments and made arguments at the hearing. Despite their efforts, the Commission reversed, finding that the Barlow 2-14 application satisfied the Act's requirements and that the Act permitted more than one well per spacing unit. It granted

---

[1] Melvin Person, Terri Person, James Mitchell, Jan Mitchell, Sue Bixby, Martina Jaramillo, Ryan Keck, Kristi Rae Cooper, Harvey Easton, Bernice Easton, Randy Payne, and Teresa Payne.

[2] Dennis Newman, Pete Simmons, Cookie Atkins, and Janie Rodriguez.

[3] The 2016 Integration Order did not integrate these Plaintiffs because they had already leased to Alta Mesa and so remained lessors to Snake River.

Snake River a drilling permit on October 26, 2020.[4]

Plaintiffs did not seek judicial review in Idaho state court but asked the Commission to initiate "contested case" proceedings under the Idaho Administrative Procedure Act. Rather than continuing to argue that the Act prohibited the Barlow 2-14 application, Plaintiffs shifted their focus to the 2016 integration hearing and order. First, they argued that the integration order—which used singular nouns in contemplating "a well"—had not contemplated the sinking of two wells in Section 14. A new well, they argued, would require a new integration order. Second, they argued that the integration process in 2016 had been constitutionally deficient, based on the then-recent decision in *Citizens Allied for Integrity and Accountability, Inc. v. Schultz*, 335 F. Supp. 3d 1216, 1228 (D. Idaho 2018).

### 3. The Prior Case

In *Schultz*, a different group of landowners—also from Fruitland, Idaho[5]—claimed that the State deprived them of due process when it issued an integration order for their land. *Id.* At the evidentiary hearing, the hearing officer did not allow the landowners to offer testimony or introduce evidence on the potential health, environmental, and economic consequences of oil extraction. *Id.* at 1220. Later, District Judge B. Lynn Winmill found that the hearing had not provided the landowners with a "meaningful opportunity to be heard on the issue of whether the integration order contained terms that were just and reasonable," and, as a result, the State had violated the landowners' due process rights.

---

[4] This well has now been sunk, and Snake River has applied to sink a third well in Section 14.

[5] Plaintiffs' counsel in this case also represented the plaintiffs in *Schultz*.

MEMORANDUM DECISION AND ORDER - 5

*Schultz*, 335 F. Supp. at 1226–27. Judge Winmill vacated the integration order and required the Commission to hold a new hearing informing the landowners of the factors it considered in determining whether the integration order was just and reasonable. *Id.* at 1230. After the *Schultz* opinion, the Commission began requiring that future integration orders involve a separate hearing and order identifying the factors and evidence considered in determining whether their terms were just and reasonable.

### 4. Contested Case Proceedings and the 2021 Final Order

On December 16, 2020, the Commission took up contested case proceedings pursuant to Plaintiffs' request. The only question it considered was whether the 2016 integration order applied to the Barlow 2-14 well. Plaintiffs appeared and argued the issue at a hearing on March 9, 2021. At its conclusion, the Hearing Officer released a recommended order interpreting the 2016 integration order and finding that it allowed for the drilling of a second well. The Commission accepted the hearing officer's recommendations and issued them as a final order on May 28, 2021. The final order states that the 2016 integration order "did not limit the Section 14 Barlow Unit to one well; did not require a new integration application process for a second well; and integrated all separate tracts without restriction by depth, pool, or well." Dkt. 26–1, at 8. The final order does not include a separate analysis on whether its terms are just or reasonable. Unsatisfied with the results of the administrative proceedings, Plaintiffs filed suit before this Court.

### B. Procedural Background

Plaintiffs' Complaint alleges, via 42 U.S.C. § 1983, that various members of the Commission deprived them of property without due process or just compensation, thus

violating the Fifth and Fourteenth Amendments. Dkt. 1. Later, Snake River moved to join the case as an intervenor–defendant (Dkt. 10), and the Court granted permission (Dkt. 20). On August 12, 2022, Defendants filed a Motion for Summary Judgment (Dkt. 25) seeking to dismiss Plaintiffs' claims. That same day, intervenor Snake River filed a Motion for Summary Judgment (Dkt. 24) also seeking dismissal, and Plaintiffs filed their own Motion for Summary Judgment (Dkt. 25) asking the Court to vacate the 2016 and 2021 orders.

### III. LEGAL STANDARD

Summary judgment is appropriate when the moving party can show that, as to any claim or defense "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248. Summary judgment is not appropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*,

MEMORANDUM DECISION AND ORDER - 7

477 U.S. at 249. The Court does not make credibility determinations at this stage of the litigation, as such determinations are reserved for the trier of fact. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). In considering a motion for summary judgment, the Court must also "view[] the facts in the non-moving party's favor[.]" *Zetwick v. Cty. Of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017). The standard applicable to motions for summary judgment do not generally change if the parties file cross motions. *See, e.g.*, *Cady v. Hartford Life & Accidental Ins.*, 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013).

## IV. ANALYSIS

The threshold issue here is the statute of limitations. The Plaintiffs' theory of standing rests on their allegations of various constitutional violations, so the Court begins with the question of whether the statute of limitations on those claims has run.

The statute of limitations for actions under 42 U.S.C. § 1983 is the forum state's limit for personal injury suits. *Wilson v. Garcia*, 471 U.S. 261, 275–76 (1985). In Idaho, that limit is two years. Idaho Code § 5-219(4). Here, it is undisputed that the 2016 integration order took place well outside that statutory period. The issue is whether the 2021 final order created a continuing violation such that the statute of limitations will not bar Plaintiffs' claims. Because this is a question of law, it can be properly decided at summary judgment.

Generally, the discovery rule governs § 1983 actions: a claim accrues when "the plaintiff has a complete and present cause of action, that is, when the plaintiff can sue and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (cleaned up); *see also Ellis v. Salt River Project Agric. Improvement and Power Dist.*, 24 F.4th 1262, 1271 (9th Cir.

2022) (holding that the period begins to run when the claim accrues). In cases challenging a series of government decisions, "the question is when the operative decision was made." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1059 (9th Cir. 2002). "If more than one decision by the defendants is at issue, the question is whether the later decision was 'the inevitable consequence of an earlier decision,' which will not trigger a new statute of limitations; or 'the result of independent consideration,' which will cause a new statute of limitations to begin." *Smith v. Rawson*, 2021 WL 1220617, at *10 (D. Idaho Mar. 31, 2021) (quoting *RK Ventures*, 307 F.3d at 1061); *see also Ellis*, 24 F.4th at 1272 ("holding a hearing in a proceeding that had already begun [is] not a separately unconstitutional act.").

The continuing violations doctrine is a narrow exception to the discovery rule, "allowing a plaintiff to seek relief for events outside of the limitations period." *Bird v. Haw. Dep't of Human Serv.*, 935 F.3d 738, 746 (9th Cir. 2019) (cleaned up). Its essence is that "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Id.*

The doctrine applies in two situations. First, its "serial acts" branch applies when, in a series of related acts, at least one act falls within the limitations period. *See Bird*, 935 F.3d at 746. Under this branch, however, "discrete . . . acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." *Id.* at 747 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)); *see also Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*, 344 F.3d 822, 829 (9th Cir. 2003) (restating the Ninth Circuit's history of barring § 1983 claims "predicated on discrete time-barred acts, even when those acts related to timely-filed claims"). The second branch applies when a

"discriminatory system" persists both before and during the limitations period. *Bird*, 935 F.3d at 746. Still, "[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981). After a series of limiting Supreme Court decisions, "little remains of the continuing violations doctrine." *Bird*, 935 F.3d at 748. Particularly, "the serial acts branch is virtually non-existent." *Id.*

Here, in 2016, the Commission issued an integration order under which Plaintiffs were "deemed leased." The order incorporated Alta Mesa's proposed lease (the "Lease"). That same year, the Department granted a drilling permit. Five years later, in 2021, the Commission issued a final order determining that the 2016 order allowed a second well in Section 14. Based on these facts, Plaintiffs argue the State took their property rights without due process or just compensation.[6]

For their Due Process claim, Plaintiffs argue that the 2020 hearing in the contested case proceeding was constitutionally inadequate because it relied on the 2016 integration order, which emerged from the same process found constitutionally inadequate in *Schultz*. Dkt. 1, at 7. Plaintiffs position this claim under the serial acts branch.

For Fifth Amendment claims, Plaintiffs allege that Defendants have engaged in four separate trespasses. First, in 2016 the Department authorized the Barlow 1-14 well. Second, at the same time, the Commission authorized Alta Mesa's lease which, in theory, allows

---

[6] Plaintiffs also say that the Act is unconstitutional because it violates "substantive and procedural due process" and "fails to provide equal protection of the laws . . . ." Dkt. 1, at ¶ 27. Plaintiffs have not briefed their equal protection and substantive due process claims, but the Court assumes they arise out of the same events at the same times and so are subject to the same limitations period.

MEMORANDUM DECISION AND ORDER - 10

Snake River to build structures on the surface of Plaintiffs' property.[7] Third, in 2021, the Commission authorized the Barlow 2-14 well, which Plaintiffs contend was a separate trespass. Fourth and finally, Plaintiffs argue that the 2021 Final Order "necessarily authorized a surface estate trespass for any purpose related to the development and operation of [the Barlow 2-14 well]."[8] Dkt. 25-1, at 16. Because they are allegedly unable to prevent Snake River from building on their property, Plaintiffs position these claims under the discriminatory system branch.

Neither of the continuing violations doctrine's branches apply here. First, the serial acts branch is not applicable to Plaintiffs' due process claim. Plaintiffs argue that, before the 2021 final order, there was no way to know that the 2016 integration order allowed multiple wells, so it was impossible to bring this claim before then. Because the 2021 order paved the way for a new well in the same way the 2016 order did, they portray the two orders as serial, coequal harms, with the latter inside the statute of limitations.

Defendants counter that the 2021 Order was not an integration order, but a secondary order interpreting the 2016 order.[9] Because the 2021 Order did not change the practical or legal effects of the 2016 order, Defendants argue it cannot constitute a new injury. The Court agrees.

---

[7] Intervenor Snake River contends that, if one measures the setbacks the Act requires against the acreage held by Plaintiffs, it would be legally impossible to build a structure on any of the plaintiffs' property without their consent. Dkt. 27, at 11.

[8] Defendants counter that this is impossible because the 2021 order did not integrate any properties.

[9] For this reason, the Commission did not employ the new "just and reasonable" procedures it developed after *Schultz*—those procedures are mandatory only for integration orders, not contested case proceedings.

MEMORANDUM DECISION AND ORDER - 11

Plaintiffs structure their due process claim like a Russian doll. Though its outer shell—the 2020 hearing—might be within the limitations period, the layers fall away to reveal that its core is the process surrounding the 2016 integration order six years ago. It may not have been clear in 2016 that the integration order would permit multiple wells, but the very ambiguity of that order implied that later interpretive decisions would be necessary. In this case, the 2016 integration order was a "discreet time-barred act," *Carpinteria Valley Farms*, 344 F.3d at 829, and the 2020 hearing and 2021 final order were merely "the inevitable consequence[s] of [that] earlier decision." *RK Ventures*, 307 F.3d at 1061. Thus, they did not trigger a new statute of limitations. *Id.*

Even if one only considers the practical effects of the two orders (e.g., they each preceded the drilling of a well), the 2020 hearing and 2021 order do not constitute independent due process violations. Because they were not integration orders, they were not subject to *Schultz*'s requirement for "just and reasonable" determination. The *Schultz* decision hinges on the requirement in Idaho Code Section 47-320(1) that "[e]ach such integration order shall be upon terms that are just and reasonable." In *Schultz*, Judge Winmill found that the due process clause requires integration orders to include analysis on what makes their terms "just and reasonable." Defendants argue that "in the absence of that statutory phrase, which is applicable only to the process of integration, Plaintiffs have no property right in a 'just and reasonable' determination," and thus no due process claim arises from the 2020 hearings or 2021 order." Dkt. 30, at 4. Again, the Court agrees. Because the 2020 hearings and the 2021 order were not integration orders, *Schultz's* due process standard did not apply to them, and the way they were conducted did not violate

Plaintiffs' constitutional rights.

Similarly, the Court finds that none of the State's actions have created a discriminatory system. Plaintiffs' discriminatory system argument rests on an analogy with *Flynt v. Shimazu*, a case in which the Ninth Circuit held that the existence of a discriminatory system prevented an otherwise applicable statute of limitations from barring a § 1983 claim. 940 F.3d 457, 462 (2019). That case arose out of a set of California statutes that collectively prevented in-state casino operators from owning more than one percent of any gambling institution outside the state. *Id.* at 460. These laws forced the plaintiff casino owners to consistently decline investment opportunities in out-of-state casinos. *Id.* The plaintiffs brought a facial constitutional challenge against the laws, alleging that they violated the dormant commerce clause. *Id.* Though the applicable statute of limitations for such actions had already run, the Ninth Circuit held that the plaintiffs had established a continuing harm because the relevant laws, coupled with the state's willingness to enforce them, prevented the plaintiffs from investing in out-of-state casinos as they wished. *Id.* at 462.

Here, Plaintiffs argue that they suffer a similar continuing offense because the 2017 incorporation of the Alta Mesa lease and the 2021 final order effectively prohibit them from expelling Snake River from their property. The holding from *Flynt*, however, does not fit neatly onto the facts of this dispute. First, the legal situation is different. The *Flynt* plaintiffs made a facial constitutional challenge against a statutory scheme. By contrast, the Plaintiffs here are challenging the effects of state administrative decisions. Two discrete administrative decisions—with one merely interpreting the other—are not analogous to a

discriminatory statutory scheme. Second, the factual situation is different. In *Flynt*, the discriminatory system comprised both the California laws and *the state's willingness* to enforce them. *Id.* In other words, the plaintiffs were prohibited in both theory and practice from engaging in interstate commerce. Further, the restrictions on them were concrete and immediate: they were obligated to decline existing investment opportunities because there was an operative prohibition against them. By contrast, Plaintiffs here allege that the 2016 and 2021 orders authorized *potential* surface[10] trespasses on their property, effectively barring them "from exercising their property right to exclude a gas company from crossing their property." Dkt. 16. But until Snake River builds something on the surface of Plaintiffs' property—which it has not done and concedes it cannot legally do without their permission—there is nothing for the Plaintiffs to exclude. The allegedly ongoing violation of Plaintiffs' property rights is neither concrete nor immediate. Thus, Plaintiffs are not experiencing an "ongoing violation" so much as the "continual ill effects" of the 2016 integration. *Ward*, 650 F.2d at 1147.

With neither of the branches of the continuing violations doctrine applicable, the discovery rule governs: Plaintiffs' claims accrued when they could have brought suit—in 2016—because the integration order was the "operative decision." *RK Ventures*, 307 F.3d at 1059. The window for filing suit closed two years later, in 2018. Thus, Plaintiffs' claims are barred as a matter of law. Because the statute of limitations on Plaintiffs' § 1983 claims

---

[10] Plaintiffs do not contend that the subsurface trespasses authorized by the Act are unconstitutional. Dkt. 25-1, at 16. Even if they did, this Court has already found that the Act is an appropriate exercise of the State's police power and does not constitute a trespass in itself. *See Schultz*, 335 F. Supp. 3d, at 1224–27.

MEMORANDUM DECISION AND ORDER - 14

has run, the Parties' arguments about standing, issue preclusion, laches, and ripeness are moot.

## V. CONCLUSION

The statute of limitations bars Plaintiffs' claims. Thus, the Court will GRANT summary judgment in Defendants' favor.

## VI. ORDER

1. Defendants' Motion for Summary Judgment (Dkt. 26) is GRANTED.

2. Intervenor's Motion for Summary Judgment (Dkt. 24) is GRANTED.

3. Plaintiffs' Motion for Summary Judgment (Dkt. 25) is DENIED.

4. Summary judgment is entered in favor of the Defendants.

5. The Court will enter a separate judgment in accordance with Federal Rule of Civil Procedure 58.

DATED: March 20, 2023

David C. Nye
Chief U.S. District Court Judge